## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:21-cr-80060-RLR

**UNITED STATES OF AMERICA**

vs.

**JOEL BARRETT,**

        **Defendant.**

_____/

### PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and

JOEL BARRETT (hereinafter referred to as the "defendant") enter into the following agreement:

1.    The defendant agrees to plead guilty to Count Four of the ~~Indictment~~, which

charges him with possession with intent to distribute 50 grams or more of methamphetamine, 100

grams or more of heroin, and a detectable amount of crack cocaine, in violation of Title 21, United

States Code, Sections 841(a)(1) and (b)(1)(A)(viii).   This Office agrees to seek dismissal of the

remaining counts of the Indictment after sentencing.

2.    The defendant is aware that the sentence will be imposed by the Court after

considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter

"Sentencing Guidelines").   The defendant acknowledges and understands that the Court will

compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines

will be determined by the Court relying in part on the results of a pre-sentence investigation by the

Court's probation office, which investigation will commence after the guilty plea has been entered.

The defendant is also aware that, under certain circumstances, the Court may depart from the

1

advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.      As to Count 4, the Court may impose a term of imprisonment of up to life, and must impose a term of imprisonment of at least ten (10) years, followed by a term of supervised release of at least five (5) years and up to life. In in addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $10,000,000.00.

4.      The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5.      This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses

committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. Further, the government agrees to recommend a sentence at the low end of the guideline range as determined by the Court. However, the Office will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the Office prior to entering this Agreement; or (3) commits any misconduct after entering into this Agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that

the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

8.      This is the entire agreement and understanding between this Office and the defendant.   There are no other agreements, promises, representations, or understandings.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 10/19/2021          By: _Marton Gyires_
                               MARTON GYIRES
                               ASSISTANT UNITED STATES ATTORNEY

Date: 9/6/22              _R. Michael Hursey_
                               R. MICHAEL HURSEY
                               ATTORNEY FOR DEFENDANT

Date: 9/6/22              _Joel Barrett_
                               JOEL BARRETT
                               DEFENDANT

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

JOEL BARRETT,

Defendant.
_____/

STIPULATION OF FACTS AND ACKNOWLEDGMENT OF OFFENSE ELEMENTS IN SUPPORT OF GUILTY PLEA

The United States of America, by and through its undersigned Assistant United States Attorney, and JOEL BARRETT, (hereinafter referred to as the "Defendant" or "BARRETT"), together with his counsel, admit that the government can prove the allegations contained in Count Four of the Indictment, which charges possession with intent to distribute 50 grams or more of methamphetamine, 100 grams or more of heroin, and a detectable amount of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).   The Defendant also stipulates that those allegations and the following recitation of the facts shall constitute the underlying factual basis.   These facts are offered for the limited purpose of the guilty plea and consequently does not contain all of the facts known to the government in this case:

On or about August 13, 2020, at the direction of controlling agents, a cooperating defendant ("CD") purchased approximately four ounces of heroin from Joel BARRETT for $9,600.   On a recorded call, it was arranged that the CD would meet BARRETT in the area of a Publix located at 150 South Federal Highway, Deerfield Beach, Florida.   Based on this, a briefing was held at a nearby location with members of law enforcement.   During this briefing, the CD was provided with $9,600 in U.S. currency.   The CD and his vehicle were searched for contraband, with negative results.   At approximately 2:04 p.m., the CD received a phone call from BARRETT saying that BARRETT was at the exit and making his way to the meet location.   At approximately 2:07 p.m., BARRETT arrived in a black Kia bearing Florida license plate 181NVK.   Shortly after arriving, BARRETT approached the CD's passenger side door and entered the vehicle.   Inside the CD's vehicle, BARRETT and the CD discussed various narcotics and pricing for narcotics. At approximately 2:15 p.m., BARRETT exited the CD's vehicle and got in the black Kia and left the area.   Agents on surveillance observed this meeting.   Controlling agents met the CD at a neutral location and collected the four ounces of suspected heroin, which later field-tested positive for heroin.   The conversations referenced above were either recorded by the CD and given to agents afterwards, or, alternatively, live monitored and recorded by agents as they were happening.

On or about September 29, 2020, at the direction of controlling agents, the CD purchased a Black Century Arms Mini Draco Firearm, thirty-nine rounds of 7.62 ammunition, one drum magazine, one extended magazine, and a sample of heroin for $800 from BARRETT. The day before, on or about September 28, 2020, at approximately 6:00 p.m., the CD placed a recorded telephone call to BARRETT at which time they discussed the sale of a firearm. The two agreed to meet the following day to complete the transaction for the firearm. On or about September 29, 2020, in a recorded phone call, the CD arranged to meet BARRETT in the area of the intersection of Lake Osborne Drive and High Ridge Road in Lake Worth, Florida. Based on this, a briefing was held at a nearby location with members of the FBI, USPS, PBSO Narcotics Division and DEA. During this briefing, the CD was provided with $800 in U.S. currency. The CD and his vehicle were searched for contraband, with negative results.

At approximately 7:00 p.m., the CD placed a phone call to BARRETT and notified BARRETT that he was in the area of the agreed upon location. During this call, agents noticed a green Ford Five Hundred, bearing Florida license place LFQE05, arrive in the area. BARRETT was seen exiting the blue Ford Five Hundred with a multi-colored book bag which he placed in the backseat floorboard of the CD's vehicle prior to getting in the front passenger seat. The CD then provided BARRETT with $800 of US currency. Along with firearm, BARRETT brought a sample of suspected heroin to provide to the CD. BARRETT explained he had approximately 1.5 kilograms of this substance at his residence. The conversations referenced above were either recorded by the CD and given to agents afterwards, or, alternatively, live monitored and recorded by agents as they were happening. During previous recorded conversations regarding availability of firearms for purchase, the CD repeatedly advised BARRETT of his status as a convicted felon and made additional mention of his status as being on supervised release. After the meeting between the CD and BARRETT, the CD met agents and turned over the firearm. The firearm was identified as a Century Arms Mini Draco. Included with the firearm was a drum magazine designed to be used by this weapon, an extended magazine designed to be used by this weapon, and approximately thirty-nine rounds of 7.62 ammunition. Agents field-tested the substance provided by BARRETT which returned a positive result for heroin.

On or about March 9, 2021, at approximately 6:30 a.m., a state search warrant was executed at BARRETT's residence located at 432 Wilder Street, West Palm Beach, Florida 33405. The residence is a single family residence with three bedrooms and two bathrooms. Present at the residence were Joel BARRETT, Elizabeth Woods, and two other adult males.

According to the landlord, BARRETT and Woods were listed on the lease for the residence. Inside the master bedroom, law enforcement found substances that contained cocaine, crack cocaine, heroin, fentanyl, methamphetamine (actual), and other controlled substances. The majority of the heroin/fentanyl and methamphetamine were found inside a black book bag on a shelf inside of the closet in the master bedroom. The book bag contained two multicolored bags. One of the multicolored bags contained approximately twenty-nine clear bags containing heroin, and the other multicolored bag contained approximately forty-one clear bags containing methamphetamine. Inside the same closet was a Glock 19 pistol inside of a gun box, with a loaded magazine inside the gun (no round in the chamber). The master bedroom contained photographs of BARRETT and Woods, and other indicia of occupancy as to BARRETT and Woods such as credit cards, ID documents, and other things.

2

There was an electronic dead bolt lock on the door to the master bedroom, which can be locked and unlocked with a numerical code.

In a recorded post-Miranda statement at the Palm Beach County Sheriff's Office, BARRETT said, among other things, that he has been selling drugs for about two or three years and that he obtained methamphetamine from Texas, heroin/fentanyl from Miami, Florida, and cocaine from Palm Beach County, Florida.

Lab reports confirmed the presence of the controlled substances listed above, including at least approximately a kilogram of methamphetamine (actual) and over 100 grams of a substance containing a detectable amount of heroin.

I am aware of and understand the nature of the charges to which I am pleading guilty, because I have

discussed the charges and what the prosecutor must prove to convict me with my attorney.   I understand that

the United States must prove the following facts (or "elements") of the offenses beyond a reasonable doubt:

Count 4:   Title 21, United States Code, Section 841(a)(1):

(1) the Defendant knowingly possessed 50 grams or more of methamphetamine, 100 grams or more of a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of crack cocaine; and

(2) the Defendant intended to distribute the methamphetamine, heroin, and crack cocaine.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 10/19/2021                By: _Marton Gyires_
                                    MARTON GYIRES
                                    ASSISTANT UNITED STATES ATTORNEY

Date: _9/6/22_                      _R. Michael Hursey_
                                    R. MICHAEL HURSEY
                                    ATTORNEY FOR DEFENDANT

Date: _9/6/22_                      _Joel Barrett_
                                    JOEL BARRETT
                                    DEFENDANT